# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CLINT PEDEAUX, MENDY ANN
PEDEAUX, CLINT PEDEAUX, on behalf of
JACOB, LAUREN and PETER PEDEAUX
AND LANCE TRIMBLE
     **Plaintiffs**

VERSUS

GEORGIA GULF CORPORATION;
AMOCO ENERGY TRADING
CORPORATION; AMOCO PRODUCTION
COMPANY; LOUISIANA INTRASTATE
GAS COMPANY, L.L.C.; LIG LIQUIDS
COMPANY, L.L.C.;EQUITABLE
RESOURCES, INC.; HYDROCONTROL,
INC.; HYDROCHEM INDUSTRIAL
SERVICES, INC.; XL INSURANCE
COMPANY, LTD.; PRIMEX, LTD. and
ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES
     **Defendants**

CIVIL ACTION

NO. 01CV349 B-N-3

## <u>NOTICE OF REMOVAL</u>

Petitioner, Georgia Gulf Corporation ("Georgia Gulf"), by and through its undersigned

counsel, with full reservation of any and all defenses, respectfully files this Notice of Removal and

states:

    1.    On March 29, 2001, CLINT PEDEAUX, MENDY ANN PEDEAUX, CLINT

PEDEAUX, on behalf of JACOB, LAUREN and PETER PEDEAUX and LANCE TRIMBLE

(collectively, "Plaintiffs") filed this action against Georgia Gulf and other named defendants in the

Eighteenth Judicial District Court, West Baton Rouge Parish, State of Louisiana, bearing Docket No.

31,597-C (the "State Action").

| INITIALS | DOCKET# |
|----------|---------|
|          | 1       |

KC
PH
JS, Removal

2. In the State Action, Plaintiffs seek to recover damages from Georgia Gulf and other defendants for injuries caused by their alleged exposure to chemicals at or emanating from Georgia Gulf's facility in Plaquemine, Louisiana.

3. Plaintiffs claim that they are citizens of the State of Louisiana. On information and belief, at the time of the commencement of the state court action and at the time of this removal, Plaintiffs were and are citizens of the State of Louisiana.

4. At the time of the commencement of this action sought to be removed and at the time of this removal, petitioner Georgia Gulf shows that it is and has been a corporation which was organized under the laws of the State of Delaware, having its principal place of business in the State of Georgia.

5. At the time of the commencement of this action sought to be removed and at the time of this removal, Defendant Amoco Energy Trading Corporation is a corporation organized under the laws of the State of Delaware, having their principal place of business in the State of Texas.

6. At the time of the commencement of this action sought to be removed and at the time of this removal, Defendant Amoco Production Company is a corporation organized under the laws of the State of Delaware, having their principal place of business in the State of Illinois.

7. At the time of the commencement of this action sought to be removed and at the time of this removal, Defendant HydroChem Industrial Services, Inc. is a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Texas.

8. At the time of the commencement of this action sought to be removed and at the time of this removal, Defendant XL Insurance Company, Ltd. ("XL"), is and has been an alien insurer and not a citizen of the State of Louisiana. Defendant XL is a corporation organized under the laws of Bermuda, having its principal place of business in Hamilton, Bermuda.

9.      At the time of the commencement of this action sought to be removed and at the time of this removal, Defendant Primex, Ltd. is and has been an alien insurer and not a citizen of the State of Louisiana. Defendant Primex, Ltd is a corporation organized under the laws of the Barbados, having its principal place of business in Bridgetown, Barbados.

10.      Also joined as defendants are Louisiana Intrastate Gas Company, L.L.C. and LIG Liquids Company, L.L.C. (the "LIG Defendants"), both of which are alleged by Plaintiffs to be citizens of the State of Louisiana. Georgia Gulf alleges that the LIG Defendants have been joined solely for the purpose of defeating the diversity jurisdiction of this Court and that, accordingly, said joinder is fraudulent within the meaning of that term, in this context.

11.      At the time of the commencement of this action sought to be removed and at the time of this removal, Plaintiffs named as a defendant the LIG Defendants' insurer, Associated Electric & Gas Insurance Services, is and has been an alien insurer and not a citizen of the State of Louisiana. Defendant Associated Electric & Gas Insurance Services is a corporation organized under the laws of Bermuda, having its principal place of business in Jersey City, New Jersey. Georgia Gulf alleges that the LIG Defendants and its insurer have been joined solely for the purpose of defeating the diversity jurisdiction of this Court and that, accordingly, said joinder is fraudulent within the meaning of that term, in this context.

12.      Plaintiffs have also named Defendant Equitable Resources, Inc. as a an alleged parent corporation or "alter ego" of the LIG Defendants. Upon information and belief, Equitable Resources, Inc. is a corporation organized under the laws of West Virginia, having its principal place of business in Pennsylvania.

13.      Also joined as a defendant is Hydrocontrol, Inc., which is alleged to be a citizen of the State of Louisiana. On information and belief, Georgia Gulf asserts that Hydrocontrol, Inc. is

a defunct corporation which has been joined solely for the purpose of defeating the diversity jurisdiction of the Court and that, accordingly, said joinder is fraudulent within the meaning of that term, in this context.

14.    Georgia Gulf believes and avers that the allegations made against all these nondiverse defendants are without basis in fact or law and are being made solely to defeat diversity jurisdiction. Accordingly, these fraudulently named or joined defendants should be ignored by this Court for purposes of removal jurisdiction. Further, all claims against these nondiverse defendants are prescribed and therefore there is no possibility that Plaintiffs can recover against any defendant.

15.    This civil action is one of which the district courts for the United States have original jurisdiction by reason of diversity of citizenship, 28 U.S.C. § 1332, and is one which may be removed to this Court by defendants, pursuant to the provisions of 28 U.S.C. § 1441, *et seq.*, in that it is a civil action between citizens of different states and in which citizens or subjects of a foreign state are additional parties wherein the matter in controversy exceeds the sum of $75,000.

16.    On May 8, 2001, Georgia Gulf waived service of the summons and a copy of the petition in this matter attached as Exhibit "A".

17.    Although Georgia Gulf contends that consent to removal by all other defendants is not required, Georgia Gulf represents that all other defendants who have been properly served with summonses and complaints in this action have consented to this removal. Letters of consent to this removal from these defendants are attached as Exhibit "B".

18.    Georgia Gulf asserts that the amount in controversy as to each plaintiff exceeds $75,000, exclusive of interest and costs. Alternatively, Georgia Gulf shows that at least one of the Plaintiffs has a claim for compensatory damages with a probable value in excess of $75,000, exclusive of interest and costs which meets the jurisdictional requirement for determining the

amount in controversy under 28 U.S.C. § 1332, and, therefore, this Court has supplemental jurisdiction over all claims asserted by the other Plaintiffs named in the petition pursuant to 28 U.S.C. § 1367.

19.     For the reasons set forth above, Georgia Gulf shows that this Court has original jurisdiction over the claims asserted by each of the Plaintiffs pursuant to 28 U.S.C. § 1332, or in the alternative 28 U.S.C. §§ 1332 and 1367.

20.     In addition, Plaintiffs have asserted a direct action claim against Georgia Gulf's excess liability insurer, Defendant X.L., a Bermuda corporation.

21.     Bermuda is bound by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Arbitration Convention"), 21 U.S.T. 2517, T.I.A.S. No. 6997, 30 U.N.T.S.3, reprinted following 9 U.S.C.A. § 201 (1994 Supp.) (entered into force for the United States on December 29,1970), pursuant to the United Kingdom's Instrument of Accession and subsequent extension to Bermuda.

22.     Under Article II of the Arbitration Convention, the United States and Bermuda are each bound to "recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which may have arisen or which may arise between them . . . ." Their courts are also bound to enforce such agreements.

23.     In 1970, Congress enacted legislation to enforce the Arbitration Convention in United States Courts. *See* 9 U.S.C. §§ 201-208.

24.     The insurance policy that X.L. issued to Georgia Gulf that is relevant to the claims in the State Action includes the following arbitration clause:

(1)    Any dispute, controversy or claim arising out of or relating to this Policy or the breach, termination or invalidity thereof shall be finally and fully determined in London, England under the provisions of the Arbitration Acts of 1950, 1975 and 1979 and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows:

Any party may, in the event of such a dispute, controversy or claim, notify the other party or parties to such a dispute, controversy or claim of its desire to arbitrate the matter, and at the time of such notification the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. The other party who has been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to a judge of the High Court of Justice of England and Wales for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said thirty (30) calendar day period, either of the parties may within a period of thirty (30) calendar days thereafter, after notice to the other party or parties, apply to a judge of the High Court of Justice of England and Wales for the appointment of a third arbitrator and in such case the person so appointed shall be deemed and shall act as the third arbitrator. Upon acceptance of the appointment by said their arbitrator, the Board of Arbitration for the controversy in question shall be deemed fixed. All claims, demands, denials of claims and notices pursuant to this Condition N shall be given in accordance with Condition U below.

(2)    The Board of Arbitration shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may prescribe reasonable rules and regulations governing the course and conduct of the arbitration proceeding, including without limitation discovery by the parties.

(3)    The Board shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all the parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto. Such decision shall be a complete defense to any attempted appeal or

litigation of such decision in the absence of fraud or collusion. Without limiting the foregoing, the parties waive any right to appeal to, and/or seek collateral review of the decision of the Board of Arbitration by, any court or other body to the fullest extent permitted by applicable law.

(4)     Any order as to the costs of the arbitration shall be in the sole discretion of the Board, who may direct to whom and by whom and in what manner they shall be paid.

(5)     The Company and the Insured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Company by any of the Insured's other insurers in any jurisdiction or forum other than that set forth in this Condition N, the Insured will in good faith take all reasonable steps requested by the Company to assist the Company in obtaining a dismissal of these claims (other than on the merits) and will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Company would have been liable to such insurers for indemnity or contribution pursuant to this Policy. The Insured shall be entitled to assert claims against the Company for coverage under this Policy, including, without limitation, for amounts by which the Insured reduced its judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Company and the Insured pursuant to this Condition N, which arbitration may take place before, concurrently with and/or after the action or proceeding involving such other insurers; provided, however, that the Company in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this Policy and any other defense (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers (and no determination in any such action or proceeding involving such other insurers shall have collateral estoppel, res judicata or other issue preclusion or estoppel effect against the Company in such arbitration, irrespective of whether or not the Company remained a party to such action or proceeding).

25.     The arbitration clause of the X.L. Policy falls under the Arbitration Convention under 9 U.S.C. § 202 because it is included in a commercial contract between a United States corporation and a Bermuda corporation.

26.     There is a dispute between X.L. and Georgia Gulf regarding coverage for the claims in the State Action. (A copy of the letter from X.L. denying Georgia Gulf's request for coverage is attached as Exhibit "C".) This dispute arises under the terms of the X.L. Policy, including its

respective arbitration clauses; the Arbitration Convention; 9 U.S.C. §§ 201-208; and other applicable law. Under the arbitration clause of the X.L. Policy, this dispute must be resolved in a foreign arbitration proceeding between X.L. and Georgia Gulf.

27.     This Court has subject matter jurisdiction over an action or proceeding falling under the Arbitration Convention pursuant to 9 U.S.C. § 203.

28.     Under 9 U.S.C. § 205, state court proceedings relating to an arbitration agreement falling under the Convention may be removed to federal court at any time before trial. Section 205 provides in relevant part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the places where the action or proceeding is pending.

9 U.S.C. §205.

29.     Therefore, the subject matter of the Plaintiffs' claims in the State Action relates to the arbitration agreement in the X.L. Policy within the meaning of 9 U.S.C. § 205, because X.L. and Georgia Gulf will participate in an arbitration proceeding pursuant to that agreement to resolve their dispute over coverage for the Plaintiffs' claims in the State Action.

30.     Plaintiffs' claims for injuries in the State Action are based on the same or similar chemical exposure allegations made in a related case pending in this Court, *Acosta v. Master Maint. & Constr., Inc.*, No. 98-1065-A-M2. In *Acosta*, the plaintiffs alleged that their exposure was the result of the intentional acts of Georgia Gulf and certain other defendants, and they asserted a direct action claim against X.L. as Georgia Gulf's excess liability insurer.

31.     Pursuant to 9 U.S.C. § 205, *Acosta* was removed to this Court in 1998. The Court denied the *Acosta* plaintiffs' motion to remand the case to state court. *See Acosta v. Master Maint.*

& *Constr., Inc.*, 52 F. Supp. 2d 699, 702 (M.D. La. 1999). Georgia Gulf now removes the State Action on the same grounds approved by the Court in *Acosta*.

32.     Petitioner Georgia Gulf shows that this matter is properly removable under the provisions of 28 U.S.C.A. § 1441, *et. seq*. and pursuant to these provisions, that this notice of removal has been timely filed.

33.     Pursuant to 28 U.S.C. § 1441(a), this civil action may be removed to this United States District Court since it embraces the state district court wherein the action is pending.

34.     Thirty (30) days have not passed since the receipt by any defendant not fraudulently named or joined. This notice of removal is timely pursuant to 28 U.S.C. § 1446.

35.     Promptly after filing this notice of removal, Petitioner Georgia Gulf served written notice upon the adverse party, and a copy of the notice of removal is being filed with the Clerk of the 18th Judicial District Court in and for the Parish of Iberville, State of Louisiana, to perfect the removal of this action to this Court, all in conformity with 28 U.S.C. § 1446(d).

36.     Petitioner Georgia Gulf has filed with this notice of removal a copy all pleadings that it has received as of this date.

37.     Petitioner Georgia Gulf will provide the Court with anything it requires under 28 U.S.C. § 1446(a) and/or 28 U.S.C. § 1447(b).

38.     Petitioner Georgia Gulf attaches copies of all process, pleadings and orders served upon it as required by 28 U.S.C. § 1446(a).

39.     Petitioner Georgia Gulf will give written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d).

40.   Petitioner Georgia Gulf will give written notice of this removal and file a copy with the Clerk of the Eighteenth Judicial District, West Baton Rouge Parish, State of Louisiana, as required by 28 U.S.C. § 1446(d).

41.   Petitioner Georgia Gulf reserves the right to amend this Notice of Removal.

WHEREFORE, Petitioner Georgia Gulf Corporation respectfully requests that this action proceed in this Court as an action properly removed to it.

Dated: May 9, 2001.

Respectfully submitted:

BREAZEALE, SACHSE & WILSON, L.L.P.

Emile C. Rolfs, III (#11431)
Luis A. Leitzelar (#20927)
P.O. Box 3197
One American Place, 23rd Floor
Baton Rouge, Louisiana 70821-3197
Telephone: (225) 387-4000
Telecopier: (225) 376-5619

Reginald R. Smith (*pro hac vice*)
KING & SPALDING
1100 Louisiana Street, Suite 3300
Houston, Texas 77002-5219
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

J. Kevin Buster (*pro hac vice*)
James C. Snyder, Jr. (*pro hac vice*)
Rance L. Craft (*pro hac vice*)
KING & SPALDING
191 Peachtree Street
Atlanta, Georgia 30303-1763
Telephone: (404) 572-4600
Facsimile: (404) 572-5143

**COUNSEL FOR PETITIONER GEORGIA GULF CORPORATION**

18TH JUDICIAL DISTRICT COURT
PARISH OF WEST BATON ROUGE
STATE OF LOUISIANA

NUMBER:                                       DIVISION:

CLINT PEDEAUX, MENDY ANN PEDEAUX, CLINT PEDEAUX
ON BEHALF OF JACOB, LAUREN AND PETER PEDEAUX
AND LANCE TRIMBLE

VERSUS

GEORGIA GULF CORPORATION, AMOCO ENERGY TRADING COMPANY,
AMOCO PRODUCTION COMPANY, LOUISIANA INTRASTATE GAS
COMPANY, L.L.C., LIG LIQUIDS COMPANY, L.L.C., EQUITABLE
RESOURCES, INC., HYDROCONTROL, INC., HYDROCHEM INDUSTRIAL
SERVICES, INC., XL INSURANCE COMPANY, LTD, PRIMEX, LTD AND
ASSOCIATED ELECTRIC & GAS INSURANCE SERVICE

PETITION FOR DAMAGES

NOW COMES plaintiffs, Clint Pedeaux, Mendy Ann Pedeaux, Clint Pedeaux on

behalf of his minor children, Jacob, Lauren and Peter Pedeaux and Lance Trimble,

persons of the full age of majority of the Parish of Tangipahoa, who with respect

represent:

1.

Made defendants herein are:

A. GEORGIA GULF CORPORATION, a Delaware corporation, with its
principal place of business being located in the Parish of Iberville, State of
Louisiana;

B. AMOCO ENERGY TRADING COMPANY, a foreign corporation authorized
to do and doing business in the State of Louisiana during all material times
herein as the producer of feeder fuel sold and provided to Georgia Gulf for use
in the process resulting in the production of a substance commonly known as
mustard gas;

C. AMOCO PRODUTION COMPANY, a foreign corporation authorized to do
and doing business in the State of Louisiana during all material times herein
as the producer of feeder fuel sold and provided to Georgia Gulf for use in the
process resulting in the production of a substance commonly known as
mustard gas;

D. LOUISIANA INTRASTATE GAS COMPANY, L.L.C., (LIG) a domestic
business entity authorized to do and doing business in the State of Louisiana
in the Parish of Iberville during all material times herein and owner/operator
of a pipeline which provided feeder fuel to the Georgia Gulf process resulting

F. EQUITABLE RESOURCES, INC., formerly Equitable Gas Co., a foreign business entity not authorized to do but actually doing business in the State of Louisiana (Equitable);

G. HYDROCONTROL, INCORPORATED (formerly known as "Hydrochem, Inc.") (Hydro), a domestic corporation with its principal place of business in Metairie, Louisiana;

H. HYDROCHEM INDUSTRIAL SERVICES, INC., (Hydro), a foreign corporation organized under the laws of the State of Delaware with its principal place of business located in the State of Louisiana, Parish of East Baton Rouge;

I. X.L. INSURANCE COMPANY, LTD, an alien insurer authorized to do and doing business in the State of Louisiana and an insurer which insured Georgia Gulf during all material times herein;

J. PRIMEX, LTD, an alien insurer authorized to do and doing business in the State of Louisiana and an insurer which insured Georgia Gulf during all material times herein;

K. ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES, LTD, an alien insurer authorized to do and doing business in the State of Louisiana, (AEGIS) and an insurer which insured LIG Liquids, LIG and Equitable during all material times herein.

## 2.

Georgia Gulf was the owner/operator of the Georgia Gulf facility in September 1996.

## 3.

Georgia Gulf exercised care, custody and control of the vinyl chloride monomer (VCM) plant located within its Plaquemine facility and had absolute authority to control all feed or raw materials processed, combined refined or otherwise manipulated within its processes.

## 4.

The manufacturing processing within the VCM plant are controlled chemical processes.

## 5.

Georgia Gulf has control over those chemical processes and the authority and ability to monitor the quality of any and all substances entering the chemical process within its VCM plant.

within the VCM plant would result in an adulteration of the substances within that chemical process.

7.

Georgia Gulf knew that such adulteration of substances in the presence of certain nitrogen based substance would result in the production of a substance other than ethylene dichloride.

8.

Georgia Gulf knew that natural gas contains nitrogen and sulphur based substances, which were undesirable to its ethylene dichloride processes at the VCM plant.

9.

The natural gas Georgia gulf utilized in the gas feed stock to its ethylene dichloride processes at the VCM plant contained undesirable substances (contaminants) including sulfur, amines, reactive nitrogen, chlorides and/or foam.

10.

The contaminants referenced herein invaded Georgia Gulf's ethylene dichloride manufacturing process within its VCM plant.

11.

The contaminants referenced herein were absorbed into the liquid phase direct chlorination reactor system of Georgia Gulf's ethylene dichloride manufacturing process within its VCM plant.

12.

The absorption of the contaminants as described above resulted in the formation of HN3, HN2 and HD (commonly described as nitrogen and sulfur mustard gases, respectively) within the R-201 liquid phase direct chlorination reactor system within the Georgia Gulf VCM plant.

13.

Case 1:20-cv-01061 Document 1-6 Filed 05/09/01 Page 12 of 41

The HN3, HN2 and HD (commonly described as mustard gas) which formed

14.

During operational times remote to the production of mustard gas at issue in this litigation, Georgia Gulf maintained certain instruments, apparatus or methods for the purpose of quality control monitoring of the natural gas entering as feed stock at the VCM plant to ensure the quality and specification required for its operation and that the feed stock natural gas entering the operation did not contain the undesirable substance(s).

15.

At a point in time in or around 1984 through 1987, Georgia Gulf intentionally removed the certain instrument, apparatus or method for the purpose of quality control and thereafter had no instrument, apparatus or method for the purpose of ensuring the absence of the undesirable substance(s).

16.

Georgia Gulf's removal of the instrument, apparatus or method for the purpose of monitoring the feeder gas entering the ethylene dichloride manufacturing process within the VCM plant was an intentional act.

17.

Upon removing the instrument, apparatus or method for the purpose of quality control of the feeder gas, Georgia Gulf knew or was substantially certain that it had no means to detect contaminants entering via the gas phase in the ethylene dichloride manufacturing process within its VCM plant.

18.

Since removal of the apparatus or instrumentation discussed in the preceding paragraphs, Georgia Gulf intentionally failed to monitor the ethylene dichloride process for contamination by undesirable substances.

19.

Contamination and the production of a harmful substance other than ethylene dichloride and the harms resulting were thus inevitable.

20.

21.

At all times, Georgia Gulf knew or was substantially certain that the adulteration of ethylene dichloride would result in an ultrahazardous or intrinsically dangerous substance that even with the utmost of care still poses a threat of grave human harm.

22.

At all times, Georgia Gulf knew or was substantially certain that human exposure to mustard gas would cause harm.

23.

Facing a known risk of production of a deadly toxin, the duty of Georgia Gulf to monitor its feed stock for the presence of nitrogen, sulphur or other contaminant(s) were nondelegable.

24.

Such acts and omission constitute wanton or reckless disregard for public safety in the handling and storage of a hazardous or toxic substance.

25.

Sulphur and nitrogen mustard gas agents are known hazardous or toxic substances. No effective therapy is yet available for countering the effects of mustard gas.

26.

Sulphur mustard is a known carcinogen. In addition, Georgia Gulf workers exposed to mustard agents may experience prolonged psychological manifestations including chronic depression, loss of libido and anxiety.

27.

Mustard gas agents may cause latent effects in the bone marrow, which necessitate medical monitoring for early detection.

28.

Case 3:01-cv-00349-EJR   Document 1   05/09/01   APage 15 of 41

During all material times herein, there existed between Amoco Energy and

29.

Amoco Energy sold to Georgia Gulf and Georgia Gulf received natural gas pursuant to the agreement and contract referenced in the preceding paragraph.

30.

There existed a pipeline system which was owned, operated and/or maintained by LIG and which extended onto and within Georgia Gulf's Plaquemine facility, through which the natural gas was delivered to Georgia Gulf's vinyl chloride monomer (VCM) plant located within its Plaquemine facility.

31.

The natural gas which Amoco Energy agreed to and did sell to Georgia Gulf for use at its Plaquemine facility was delivered to that facility through the pipeline system owned, operated and/or maintained by LIG and referenced in the preceding paragraph.

32.

There existed between Amoco Energy and Amoco Production a contract or agreement pursuant to which Amoco Production agreed to treat and process the natural gas to be delivered to the Georgia Gulf Plaquemine facility via the LIG pipeline.

33.

There existed between Amoco Energy and LIG a contract or agreement pursuant to which LIG agreed to deliver pipeline quality natural gas via its pipeline to the Georgia Gulf Plaquemine facility.

34.

There existed between Amoco Production and LIG Liquids a contract or agreement pursuant to which LIG Liquids agreed to treat and process the natural gas to be delivered to the Georgia Gulf Plaquemine facility via the LIG pipeline.

35.

The contracts and agreements referenced contained or constituted a *stipulation pour autrui*, that is, a contractual benefit for a third person in favor of Georgia Gulf and pursuant to which Amoco Production, LIG and LIG Liquids bound themselves to

be "pipeline quality" and consistent with industry standards, applicable law and in compliance with all applicable contracts.

36.

Equitable owned all of the outstanding shares of LIG and/or LIG Liquids stock, directly controlled the activities of LIG and/or LIG Liquids, transacted business with LIG and/or LIG Liquids at less than arm's length and/or otherwise acted in a manner consistent with LIG and/or LIG Liquids being considered as the alter ego of equitable.

37.

Amoco Energy was a seller of the natural gas delivered via the LIG pipeline system to Georgia Gulf for use at its Plaquemine facility during 1996.

38.

Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable were/was manufacturer(s) of the natural gas sold by Amoco Energy to Georgia Gulf and delivered via the LIG pipeline system to Georgia Gulf at its Plaquemine facility.

39.

Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable were/was (and continue(s) to be) in the business of providing, making, constructing, designing, remanufacturing, reconditioning and/or refurbishing pipeline quality natural gas for placement into trade or commerce.

40.

Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable were/was (and continue(s) to be) in the business of conveying possession of pipeline quality natural gas to Georgia Gulf and/or others in exchange for things of value.

41.

Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable exercised control over and/or influenced characteristic(s) of the design, construction, quality and/or composition of the natural gas sold to Georgia Gulf by Amoco energy and delivered via

was effected at the gas sweetening facilities owned and/or operated by Amoco Production and LIG Liquids.

### 43.

At the gas sweetening facilities referenced herein, natural gas is treated and/or distilled with, among other things, one or more types of amines (a reactive form of nitrogen) to remove undesirable and unwanted components of natural gas; water is also removed during such treatment by the use of a glycol or a glycol amine dehydration system; and liquids of value are removed during the processing, as well.

### 44.

By this treatment and processing system and/or through other actions and/or inactions, Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable exercised control over and/or influenced the design, construction, quality and/or composition of the natural gas Amoco Energy sold to Georgia Gulf and which was delivered via the LIG pipeline system to Georgia Gulf at its Plaquemine facility.

### 45.

The natural gas which Amoco Energy agreed to and did sell to Georgia Gulf and which was delivered via the LIG pipeline system to Georgia Gulf at its Plaquemine facility was required, reasonably expected (by Georgia Gulf) and supposed to be "pipeline quality" and consistent with industry standards, applicable laws and incompliance with all applicable contracts.

### 46.

The quality of the natural gas which LIG delivered via its pipeline system to Georgia Gulf at its Plaquemine facility was required, reasonably expected (by Georgia Gulf) and supposed to be pipeline quality and consistent with current industry standards, applicable laws and in compliance with all applicable contracts.

### 47.

The use intended by Georgia Gulf for the natural gas purchased from Amoco Energy and delivered via the LIG pipeline system was that of, among other things, a

48.

Georgia Gulf's use of said natural gas as set forth in the preceding paragraph was a reasonable anticipated use because:

A. Georgia Gulf had been using natural gas sold by Amoco energy and/or delivered through the LIG pipeline in such a manner for many years;

B. Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable knew and/or should have known Georgia Gulf was using the natural gas for such purpose and in such manner;

C. Other ethylene dichloride plants around the world use a combustion safety system such as that of Georgia Gulf;

D. Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable should reasonably have expected such use or handling of natural gas by an ethylene dichloride manufacturers in the same or similar circumstances as Georgia Gulf; and/or

E. Other facts and circumstances which will be shown at the trial of this matter.

49.

Some quantity of the natural gas sold to Georgia Gulf by Amoco Energy and delivered via the LIG pipeline system to the Georgia Gulf Plaquemine facility before September 23, 1996, was not pipeline quality and was defective in that one or more types of contaminants were contained therein.

50.

Said contaminants in the natural gas sold to Georgia Gulf by Amoco Energy and delivered via the LIG pipeline system to the Georgia Gulf Plaquemine facility included, but may not have been limited to, foam, chlorides, sulfur, amines and/or other reactive forms of nitrogen.

51.

Said contaminants rendered the natural gas sold to Georgia Gulf of Amoco energy and delivered via the LIG pipeline system to the Georgia Gulf Plaquemine facility useless and/or unsafe for its intended purpose as a diluent or combustion suppressant as previously described.

## 53.

The nitrogen contaminants referenced herein were present at the time:

A.     The natural gas was sold to Georgia Gulf by Amoco Energy;

B.     The natural gas left the control of Amoco Energy;

C.     The natural gas left the control of Amoco Production;

D.     The natural gas left the control of LIG, LIG Liquids and/or Equitable; and/or;

E.     The natural gas was delivered via the LIG pipeline system to the Georgia Gulf at its Plaquemine facility.

## 54.

The nitrogen contaminants referenced herein were not, but should have been, apparent to Georgia Gulf.

## 55.

Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable knew and/or are deemed to have known that the natural gas sold by Amoco Energy to Georgia Gulf and delivered via the LIG pipeline system to the Georgia Gulf Plaquemine facility contained contaminants.

## 56.

Neither Amoco Energy, Amoco Production, LIG, LIG Liquids nor Equitable declared to Georgia Gulf the contaminated and/or defective quality of the natural gas in question.

## 57.

Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable expressly and/or implicitly declared that the natural gas would be and was pipeline quality, free of contaminants and/or fit for its intended use.

## 58.

The natural gas was not pipeline quality, was not free of contaminants and was not fit for its intended use.

59.

60.

At the time the natural gas in question left the control of Amoco energy, Amoco Production, LIG, LIG Liquids and/or Equitable, it was unreasonably dangerous because it contained a quantity of sulfur, amines, reactive nitrogen, chlorides and/or foam which exceeded the contractual and/or industry standard specifications and/or performance standards for its pipeline quality natural gas.

61.

The natural gas sold to Georgia Gulf by Amoco Energy, sweetened, treated and/or processed by Amoco Production and/or LIG Liquids and delivered via the LIG pipeline system to the Georgia Gulf Plaquemine facility was unreasonably dangerous as contemplated by La. R.S. 9:2800.57 because at the time it left the control of Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable:

A.     It possessed characteristic(s) which could (and did) cause damage;

B.     Said characteristic(s) included, but was (were) not necessarily limited to, the presence and concentration of sulfur, amines, reactive forms of nitrogen, chlorides, foam and/or other contaminants; and

C.     Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable failed to use reasonable care to provide an (and in fact provided no such) adequate warning of said characteristic(s) and its/their danger.

62.

The natural gas was unreasonably dangerous as contemplated by La. R.S. 9:2800.54 because:

A.     Said natural gas did not conform to Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable's express warranty that it would be pipeline quality and/or free of sulfur, amines, reactive forms of nitrogen, chlorides, foam and/or other contaminants; and

B.     The express warranty(ies) referenced above induced Georgia Gulf to use the natural gas.

63.

Moreover, Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable and their agents, servants or employees acted unreasonably and/or without due care in the following nonexclusive respects:

Case 9:01-cv-00345-JJP Document 1 Page 21 of 41

C. Failing to adequately and timely monitor and/or analyze the quality and content of the natural gas passing through its/their pipeline, treatment and/or processing system(s), equipment and/or other appurtenances;

D. Failing to adequately and timely inspect and/or repair the condition of its/their pipeline, treatment and/or processing system(s), equipment, and/or other appurtenances;

E. Failing to properly and adequately process, treat, clean and/or scrub the natural gas transported through its/their pipeline, treatment and/or processing system(s), equipment, and/or other appurtenances prior to transmission or deliver of said natural gas to Georgia Gulf at its Plaquemine facility;

F. Failing to take proper and adequate precautions for the safe transmission of natural gas through its/their pipeline, treatment and/or processing system(s), equipment and/or other appurtenances prior to the transmission to Georgia Gulf at its Plaquemine facility;

G. Failing to exercise reasonable care and caution under the circumstances prior to the transmission of natural gas to Georgia Gulf at its Plaquemine facility;

H. Failing to properly train and supervise Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable employees, agents, servants and/or employees and others for whom Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable are responsible prior to the transmission of natural gas to Georgia Gulf at its Plaquemine facility;

I. Maintaining or allowing to remain in service defective equipment and/or other appurtenances relative to Amoco Energy, Amoco Production, LIG, LIG Liquids and/or Equitable's pipeline, processing and/or treatment facilities and/or any parts thereof which allowed contaminated natural gas to be delivered to Georgia Gulf at its Plaquemine facility;

J. Failing to equip any pipeline(s), gas sweetening facility(ies) and/or other equipment with an automatic emergency alert system which could have prevented and/or warned of contamination, upset and/or other unusual event within the pipeline, treatment and/or processing system(s) and/or the natural gas itself prior to the transmission of natural gas to Georgia Gulf at its Plaquemine facility;

K. Failing to warn Georgia Gulf of the existence of sulfur, amines, reactive forms of nitrogen, chloride, foam and/or other contaminants within the natural gas;

L. Failing to insure the natural gas was tested and/or measure in accordance with the transportation agreement at points of redelivery;

M. Failing to insure the natural gas met all contract and industry specifications at the point of redelivery;

N. Failing to check data available to or supplied by any cross-claim defendant; and

64.

Plaintiffs specifically plead the doctrine of *res ipsa loquitur* in that other than the presence of contaminants in the gas feed stock there is no other plausible explanation for the production of mustard gas at the Georgia Gulf ethylene dichloride process of the VCM facility in September 1996.

65.

During the week of September 23, 1996, and thereafter, Hydro was charged with the responsibility of cleaning the "fin fan" which is within a section or structure of the ethylene dichloride process of the VCM plant located within Georgia Gulf's Plaquemine facility.

66.

During the cleaning process, Hydro employees injected pressurized water through long tubal opening of the fin fan creating vapor and runoff to which Georgia Gulf employees were exposed.

67.

The vapor created to which Georgia Gulf employees were exposed was poisonous.

68.

Additionally, a substance within the tubules was allowed to escape the tubules and flow down the structure exposing Georgia Gulf employees.

69.

Hydro's failure to contain these substances was in a wanton or reckless disregard for the public's safety in the handling of a hazardous or toxic substance.

70.

The substances escaping he tubules include the following:

A.    Tris (2-chloroethyl) amine;

B.    Mustard gas (poisonous liquid);

2.      1, 1, 2 trichloroethane;

3.      Tetrachloroethane;

4.      1, 1, 2, 2 tetrachloroethane;

5.      Hexachloroethane.

### 71.

The substances listed in the preceding paragraph are hazardous and toxic substances.

### 72.

Hydro and Georgia Gulf are liable to the plaintiffs for its negligence:

A.      In failing to properly secure the area;

B.      In failing to ensure that no hazardous materials escaped so as to harm others;

C.      In failing to properly conduct their business in a safe and health manner as required by law;

D.      Failure to post the appropriate signs warning of the presence of hazardous, toxic and corrosive chemicals at that Georgia Gulf facility, as well as the likely harm of exposure and the need for proper protective equipment including, but not limited to, respirators, slicker suits, face shields and other such appropriate equipment;

E.      Failure to analyze, inspect or otherwise take the necessary precautions to detect the chemicals present at the Georgia Gulf facility;

F.      Failure to establish restricted and/or regulated areas surrounding the areas containing the hazardous, toxic and corrosive chemicals to which plaintiffs were exposed;

G.      Failure to use, require or provide the appropriate equipment or take other appropriate precautions to minimize and/or eliminate the potential of exposure to plaintiffs while plaintiffs performed their respective activities at Georgia Gulf facility;

H.      Failure to implement such procedures, policies or the use of appropriate equipment which would have assisted in preventing plaintiff's exposure to the hazardous, toxic and corrosive chemicals;

I.      Failure to provide a safe work environment for plaintiffs' family members;

J.      Failure to remove plaintiff family members contaminated clothing or otherwise decontaminate them prior to the family member leaving the site;

K.      Other acts of negligence and/or gross negligence which may be discovered

## 73.

The defendants knew or should have known that Georgia Gulf employees would be harmed emotionally and physically and that such harms would give rise to derivative claims of Plaintiffs' family members.

## 74.

### Allegations of Pedeaux Family

Plaintiff, Clint Pedeaux, was employed by Basic Industries at the time of this accident. He worked at the Georgia Gulf facility during the time of this accident. Mr. Pedeaux has continued to work for Basic Industries as a safety technician.

## 75.

On October 27, 2000, Mr. Pedeaux underwent surgery to his left ankle. The specimens sent off for testing revealed a tumor and the tissue in the ankle was dead. Recently Mr. Pedeaux learned the tissue in the left ankle is continuing to die.

## 76.

Petitioner believes the exposure to the hazardous chemicals during the month of September 1996 caused this condition. He believes his condition may get worse in the future.

## 77.

Petitioner believes all named defendants are responsible for this injury and that he is entitled to damages for his physical and mental pain and suffering, past, present, and future, loss of earning and earning capacity, past present and future, loss of enjoyment of life, past and future medical bills, loss of company benefits and loss of insurability.

## 78.

Plaintiff, Mendy Ann Pedeaux, seeks damages for a loss of consortium as her husband, Clint Pedeaux, is no longer able to support her as he has done in the past. Support includes financial, love, ability to assist at home and doing other activities enjoyed by both as a couple.

80.

## Claim of Lance Trimble

Plaintiff, Lance Trimble, was employed by Payne & Keller at the time of this accident.

81.

Plaintiff has experienced respiratory problems such as a collapsed lung and severe sinus problems since this accident. In addition, he is continuously covered with sores all over his body. As a result, he has permanent scarring to his entire body.

82

Plaintiff believes the Defendants are liable for his injuries in the manners discussed above.

83.

Plaintiff believes the Defendants are liable for his damages which include physical and mental pain and suffering, past, present and future, loss of income, past, present and future, loss of earning capacity, loss of enjoyment of life, loss of company benefits, loss of insurability and past and future medical bills.

WHEREFORE, your petitioner prays that a copy of this petition, along with a reasonably fit and proper citation by served upon the defendants; that the defendants be caused to either answer or otherwise plead within the delays, and there be judgment in favor of your petitioner and against the defendants, in solido, for all outstanding damages with legal interest from the date of judicial demand and all costs of these proceedings.

Respectfully submitted

VINET & VINET

Denise A. Vinet, LBRN: 17185
11817 Bricksome Ave., Suite A
Baton Rouge, LA 70816
Telephone: (225) 292-7410
ATTORNEY FOR PLAINTIFFS

PLEASE SERVE:

**PLEASE ALSO SERVE:**

LIG Liquids Company, L.L.C.
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70808

Louisiana Intrastate Gas Company, L.L.C.
Through its agent for service of process
CT Corporation System
8550 United Plaza
Baton Rouge, LA 70808

Amoco Energy Trading Company
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70808

Amoco Production Company
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70808

Equitable Resources, Inc.
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70808

Associated Electric & Gas Insurance Services, LTD
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70808

Hydrochem Industrial Services, Inc.
Through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70808

Hydrocontrol, Inc.
Through its agent for service of process
Salvadore J. Cangemi
4421 Conlin St., Suite 201
Metairie, LA 70006

**HOLD SERVICE:**

Primex, LTD

X.L. Insurance Company, LTD

# UNITED STATE DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CLINT PEDEAUX, MENDY ANN
PEDEAUX, CLINT PEDEAUX, on behalf of
JACOB, LAUREN and PETER PEDEAUX
AND LANCE TRIMBLE
    **Plaintiffs**

VERSUS

GEORGIA GULF CORPORATION;
AMOCO ENERGY TRADING
CORPORATION; AMOCO PRODUCTION
COMPANY; LOUISIANA INTRASTATE
GAS COMPANY, L.L.C.; LIG LIQUIDS
COMPANY, L.L.C.; EQUITABLE
RESOURCES, INC.; HYDROCONTROL,
INC.; HYDROCHEM INDUSTRIAL
SERVICES, INC.; XL INSURANCE
COMPANY, LTD.; PRIMEX, LTD. and
ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES
    **Defendants**

CIVIL ACTION

NO. _____

## <u>CONSENT TO REMOVAL</u>

NOW COMES Defendant HydroChem Industrial Services, Inc., by and through counsel, and

hereby consents to the removal of the above entitled action by Defendant Georgia Gulf Corporation

to the United States District Court for the Middle District of Louisiana.

Baton Rouge, Louisiana, this _____9th_____ day of May, 2001.

EXHIBIT
B

By Attorneys:

BREAZEALE, SACHSE & WILSON, L.L.P.

Emile C. Rolfs, III (#11431)
Luis A. Leitzelar (#20927)
P.O. Box 3197
One American Place, 23rd Floor
Baton Rouge, Louisiana 70821-3197
Telephone: (225) 387-4000
Telecopier: (225) 376-5619

Reginald R. Smith (*pro hac vice)*
KING & SPALDING
1100 Louisiana Street, Suite 3300
Houston, Texas 77002-5219
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

J. Kevin Buster (*pro hac vice*)
James C. Snyder, Jr. (*pro hac vice*)
Rance L. Craft (*pro hac vice*)
KING & SPALDING
191 Peachtree Street
Atlanta, Georgia 30303-1763
Telephone: (404) 572-4600
Facsimile: (404) 572-5143

*Counsel for Defendant*
*HydroChem Industrial Services, Inc.*

# PHELPS DUNBAR LLP
### COUNSELORS AT LAW

City Plaza • Suite 701 • 445 North Boulevard
Baton Rouge, Louisiana 70802-5707
P. O. Box 4412
Baton Rouge, Louisiana 70821-4412
(225) 346-0285
Fax (225) 381-9197

www.phelpsdunbar.com

VIRGINIA Y. TRAINOR
Baton Rouge Office
trainorg@phelps.com

April 27, 2001

14719-1

**VIA FACSIMILE**

Mr. James C. Snyder, Jr.
KING & SPALDING
191 Peachtree Street
Atlanta, GA 30303-1763

Mr. Thomas E. Schwab
Barkley and Thompson
1515 Poydras Street, Suite 2350
New Orleans, LA 70112

Mr. Michael Satz
Sedgwick Detert Moran & Arnold
209 S. Lassalle St., 7th Floor
Chicago, Illinois 60604

Re:  Clint Pedeaux, et al v. Georgia Gulf Corporation, et al., C.A. No. 31597, Div. "C,"
18th JDC, Parish of West Baton Rouge, State of Louisiana

Dear Jim, Mike and Tom:

Primex has received and reviewed a copy of the Petition for Damages in the case referenced above. The purpose of this letter is to advise that Primex consents to removal of this action from state to federal court.

If you have any questions, please do not hesitate to call.

Very truly yours,

PHELPS DUNBAR LLP

Virginia Y. Trainor

BR 261066.1

New Orleans, LA      Baton Rouge, LA      Jackson, MS      Tupelo, MS      Gulfport, MS      Houston, TX      London, England

JOHNSON, JOHNSON, BARRIOS & YACOUBIAN
A PROFESSIONAL LAW CORPORATION
ONE SHELL SQUARE
701 POYDRAS ST., SUITE 4700
NEW ORLEANS, LOUISIANA 70139-7708

TELEPHONE (504) 528-3001
FACSIMILE (504) 528-3030

Ronald A. Johnson
e-mail
ronjohn@jjbylaw.com

April 27, 2001

**Via Facsimile (713) 751-3290**

Mr. James C. Snyder
King & Spalding
1100 Louisiana Street, Suite 3300
Houston, Texas 77002-5219

RE: Clint Pedeaux, et al vs.
Georgia Gulf Corporation, et al
18th J.D.C. No. 31597
Our File No.: 0203-5194

Dear Jim:

The Amoco defendant entities in the captioned case hereby provide their consent to the removal of this action to the United States District Court.

Yours very truly,

JOHNSON, JOHNSON, BARRIOS & YACOUBIAN

Ronald A. Johnson

RAJ/efp/149460

LAW OFFICES

# LEMLE & KELLEHER, L.L.P.
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

21st FLOOR, PAN-AMERICAN LIFE CENTER

601 POYDRAS STREET · NEW ORLEANS, LOUISIANA 70130-6097

TELEPHONE (504) 586-1241  FAX: (504) 584-9142

BATON ROUGE OFFICE
ONE AMERICAN PLACE
301 MAIN STREET
SUITE 1800
BATON ROUGE, LOUISIANA 70825
TELEPHONE: (225) 387-5068
FAX: (225) 387-4995

HAL C. WELCH
PARTNER
(504) 584-9113
hwelch@lemle.com

April 27, 2001

Mr. James C. Snyder, Jr.
KING & SPAULDING
191 Peachtree Street
Atlanta, Georgia  30303-1763

    Re:   *Pedeaux vs. Georgia Gulf*
         Our File No: 6035-970673

Dear Jim:

    This will confirm our advices that the LIG entities have no objection to the removal of this action by Georgia Gulf Corporation.

                Sincerely,

                LEMLE & KELLEHER, L.L.P.

                HAL C. WELCH

HCW:tfb

261454-1

# SEDGWICK,
## DETERT, MORAN
## & ARNOLD

April 27, 2001

VIA FACSIMILE

Ms. Melanie C. Davis
Assistant General Counsel
Georgia Gulf Corporation
400 Perimeter Center Terrace
Suite 595, P.O. Box 105197
Atlanta, GA 30?

Re: **Named Insured:**      **GEORGIA GULF CORPORATION**
     **X.L. Policy No.:**      **XLUMB-00209**
     **Claimants:**      **Pedeaux and Trimble**
     **D.O.L.:**      **September 24, 1996**
     **X.L. File No.:**      **UMB-00209-96-0001-GT4**
     **SDM&A File No.:**      **471-30505**

Dear Davis:

This will acknowledge receipt of the petition recently filed by the above-referenced ants in the 18th Judicial District Court in the Parish of West Baton Rouge. We note that Insurance Ltd. is also named as a defendant in this new action which arises out of the dent that occurred at the Plaquemine facility in September 1996. It appears from the complaint that plaintiffs are alleging that Georgia Gulf "knew or was substantially certain" of the hazardous nature of the "contaminants" in the fin fan coolers and that workers would be physically harmed by their exposure to these "contaminants."

XL must reserve its rights as to coverage for any damages based upon the allegations of intentional conduct in this case, as the definition of Occurrence (Article III, V (2)) provides "that any actual or alleged Personal Injury...which is Expected or Intended by any Insured shall not be included in any Occurrence."

If you have any questions, please do not hesitate to contact the undersigned.

**EXHIBIT**
tabbies
**C**

The Rookery
209 South LaSalle Street   Seventh Floor   Chicago, Illinois 60604-1202
Telephone 312.641.9050   Facsimile 312.641.9530

| SAN FRANCISCO | LOS ANGELES | ORANGE COUNTY | NEW YORK | LONDON | ZURICH | PARIS |
|---|---|---|---|---|---|---|
| 415.781.7900 | 213.426.6900 | 949.852.8200 | 212.422.0202 | 44.20.7929.1829 | 41.1.201.1720 | 33.1.4704.5502 |

| | |
|---|---|
| CLINT PEDEAUX, MENDY ANN PEDEAUX, CLINT PEDEAUX, on behalf of JACOB, LAUREN and PETER PEDEAUX AND LANCE TRIMBLE<br>**Plaintiffs** | CIVIL ACTION<br><br>NO. _____ |

VERSUS

GEORGIA GULF CORPORATION; AMOCO ENERGY TRADING CORPORATION; AMOCO PRODUCTION COMPANY; LOUISIANA INTRASTATE GAS COMPANY, L.L.C.; LIG LIQUIDS COMPANY, L.L.C.; EQUITABLE RESOURCES, INC.; HYDROCONTROL, INC.; HYDROCHEM INDUSTRIAL SERVICES, INC.; XL INSURANCE COMPANY, LTD.; PRIMEX, LTD. and ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES
      **Defendants**

## **AFFIDAVIT**

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

      BEFORE ME, the undersigned authority, personally came and appeared

### **LUIS A. LEITZELAR**

who, after first being duly sworn, did depose and say:

      That all of the allegations contained in the Notice of Removal filed herein are true and correct to the best of his knowledge, information and belief.

_____
LUIS A. LEITZELAR (#20927)

SWORN TO AND SUBSCRIBED BEFORE ME, Notary, this 9ᵗʰ day of May, 2001.

_____
NOTARY PUBLIC

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CLINT PEDEAUX, MENDY ANN
PEDEAUX, CLINT PEDEAUX, on behalf of
JACOB, LAUREN and PETER PEDEAUX
AND LANCE TRIMBLE
    **Plaintiffs**

CIVIL ACTION

NO. _____

VERSUS

GEORGIA GULF CORPORATION;
AMOCO ENERGY TRADING
CORPORATION; AMOCO PRODUCTION
COMPANY; LOUISIANA INTRASTATE
GAS COMPANY, L.L.C.; LIG LIQUIDS
COMPANY, L.L.C.; EQUITABLE
RESOURCES, INC.; HYDROCONTROL,
INC.; HYDROCHEM INDUSTRIAL
SERVICES, INC.; XL INSURANCE
COMPANY, LTD.; PRIMEX, LTD. and
ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES
    **Defendants**

## PROOF OF SERVICE

**LUIS A. LEITZLAR**, being duly sworn, does depose and say:

That he is the counsel for Georgia Gulf Corporation, defendant herein; that on the 9th

day of May, 2001, after the Notice of Removal had been filed with the above court, he mailed a

copy of said Notice of Removal and attachments to the following attorneys for plaintiffs. by

depositing same in the United States Mail, postage prepaid, and properly addressed:

    Ms. Denise A. Vinet (#17185)
    VINET & VINET
    11817 Bricksome Avenue, Ste. A
    Baton Rouge, LA 70816
    Telephone: (225) 292-7410
    Telecopier: (225) 292-4149

Affiant further deposes and says that on the same day, immediately following the delivery of the aforesaid papers, he had a copy of said Notice of Removal delivered by hand to the Clerk of Court for the 18th Judicial District Court for the Parish of West Baton Rouge, State of Louisiana for filing, in the matter entitled *Clint Pedeaux, et al. v. Georgia Gulf Corporation, et al.* bearing Suit Number 31,597, Division "C" on the docket of said court.

_____
LUIS A. LEITZELAR (#20927)

SWORN TO AND SUBSCRIBED BEFORE ME, Notary, this 9th day of May, 2001.

_____
NOTARY PUBLIC

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CLINT PEDEAUX, MENDY ANN
PEDEAUX, CLINT PEDEAUX, on behalf of
JACOB, LAUREN and PETER PEDEAUX
AND LANCE TRIMBLE
    **Plaintiffs**

CIVIL ACTION

NO. _____

VERSUS

GEORGIA GULF CORPORATION;
AMOCO ENERGY TRADING
CORPORATION; AMOCO PRODUCTION
COMPANY; LOUISIANA INTRASTATE
GAS COMPANY, L.L.C.; LIG LIQUIDS
COMPANY, L.L.C.; EQUITABLE
RESOURCES, INC.; HYDROCONTROL,
INC.; HYDROCHEM INDUSTRIAL
SERVICES, INC.; XL INSURANCE
COMPANY, LTD.; PRIMEX, LTD. and
ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES
    **Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Removal was this day hand delivered and/or mailed; postage prepaid and properly addressed to each of the following:

Ms. Denise A. Vinet (#17185)
VINET & VINET
11817 Bricksome Avenue, Ste. A
Baton Rouge, LA 70816
Telephone: (225) 292-7410
Telecopier: (225) 292-4149

Mr. Reginald R. Smith (#000792174)
KING & SPALDING
1100 Louisiana Street, Ste. 3300
Houston, Texas 77002-3200
Telephone: (713) 751-3200
Telecopier: (713) 751-3290
Attorneys for Defendant Georgia Gulf

Mr. James C. Snyder, Jr.
Mr. Rance L. Craft
KING & SPALDING
191 Peachtree Street
Atlanta, GA 30303-1763
Telephone: (404) 572-4600
Telecopier: (404) 572-5143
Attorneys for Defendant Georgia Gulf

Mr. Hal C. Welch (#13344)
Ms. Amy L. Baird (#18057)
LEMLE & KELLEHER, L.L.P.
21st Floor, 601 Poydras Street
New Orleans, LA 70130-6097
Telephone: (504) 586-1241
Telecopier: (504) 584-9142
Attorneys for Defendant Louisiana Intrastate
Gas Company

Mr. Ronald A. Johnson (#7329)
Mr. Michael W. Mallory (#19692)
Mr. Salvatore A. Faso, II (#24411)
JOHNSON, JOHNSON, BARRIOS &
YACOUBIAN
4900 One Shell Square
New Orleans, LA 70139-7701
Telephone: (504) 528-3001
Telecopier: (504) 528-3030
Attorneys for Defendant Amoco

Mr. D. Russell Holwadel (#16975)
ADAMS, JOHNSTON & ORECK, A
P.L.C.
601 Poydras Street, Suite 2490
New Orleans, LA 70130
Telephone: (504) 581-2606
Telecopier: (504) 525-1488
Attorneys for Defendant Associated Electric
& Gas Insurance Serv.

Mr. John L. Rivkin
Mr. Michael A. Sirignano
RIVKIN, READLER & KREMER
EAB Plaza
Uniondale, NY 11556-0111
Telephone: (516) 357-3000
Telecopier: (516) 357-3333
Attorneys for Defendant Associated Electric
& Gas Insurance Serv.

Mr. H. Alston Johnson, III
Mr. Marshall M. Redmon
PHELPS DUNBAR
445 North Boulevard, Ste. 701
Baton Rouge, LA 70802
Telephone: (225) 346-0248
Telecopier: (225) 381-9197
Attorneys for Defendant Primex, Ltd.

Mr. Thomas E. Schwab
BARKLEY & THOMPSON
1515 Poydras Street, Ste. 2350
New Orleans, LA 70112
Telephone: (504) 595-3350
Telecopier: (504) 595-3355
Attorneys for Defendant X.L. Insurance
Company, Ltd.

Equitable Resources, Inc.
through its agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA 70808

Baton Rouge, Louisiana, this _9th_ day of May, 2001.

LUIS A. LEITZELAR (#20927)

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CLINT PEDEAUX, MENDY ANN
PEDEAUX, CLINT PEDEAUX, on behalf of
JACOB, LAUREN and PETER PEDEAUX
AND LANCE TRIMBLE
    **Plaintiffs**

VERSUS

GEORGIA GULF CORPORATION;
AMOCO ENERGY TRADING
CORPORATION; AMOCO PRODUCTION
COMPANY; LOUISIANA INTRASTATE
GAS COMPANY, L.L.C.; LIG LIQUIDS
COMPANY, L.L.C.; EQUITABLE
RESOURCES, INC.; HYDROCONTROL,
INC.; HYDROCHEM INDUSTRIAL
SERVICES, INC.; XL INSURANCE
COMPANY, LTD.; PRIMEX, LTD. and
ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES
    **Defendants**

CIVIL ACTION

NO. 01 CV 349 B-M-3

## NOTICE TO ADVERSE PARTIES

TO:   Ms. Denise A. Vinet (#17185)
     VINET & VINET
     11817 Bricksome Avenue, Ste. A
     Baton Rouge, LA 70816
     Telephone: (225) 292-7410
     Telecopier: (225) 292-4149

YOU ARE HEREBY NOTIFIED that this on this 9th day of May, 2001, defendant,

GEORGIA GULF CORPORATION, has filed the attached Notice of Removal together with other

attached documents with the Clerk of Court, Middle District of Louisiana, 777 Florida Street,

Suite 139, Baton Rouge, Louisiana 70801, and a copy of said Notice of Removal has this date also

been filed with the Clerk of Court for the 18th Judicial District Court, Parish of West Baton Rouge, State of Louisiana.

This Notice is filed pursuant to 28 U.S.C. §1446(d) to effect the removal of this action from this Court to the aforesaid United States District Court.

All of which is most respectfully submitted.

By Attorneys:

BREAZEALE, SACHSE & WILSON, L.L.P.

Emile C. Rolfs, III (#11431)
Luis A. Leitzelar (#20927)
P.O. Box 3197
One American Place, 23rd Floor
Baton Rouge, Louisiana 70821-3197
Telephone: (225) 387-4000
Telecopier: (225) 376-5619

Reginald R. Smith (*pro hac vice*)
KING & SPALDING
1100 Louisiana Street, Suite 3300
Houston, Texas 77002-5219
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

J. Kevin Buster (*pro hac vice*)
James C. Snyder, Jr. (*pro hac vice*)
Rance L. Craft (*pro hac vice*)
KING & SPALDING
191 Peachtree Street
Atlanta, Georgia 30303-1763
Telephone: (404) 572-4600
Facsimile: (404) 572-5143

*Counsel for Defendant*
*Georgia Gulf Corporation*